## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MARGARET GALLAGHER,                     )
                                        )
              Plaintiff,                )
                                        )
       v.                               )      Civil Action No. 19-3091 (ABJ)
                                        )
EAT TO THE BEAT, INC., *et al.*,        )
                                        )
              Defendants.               )
_____)

## <u>MEMORANDUM OPINION</u>

On October 10, 2019, plaintiff Margaret Gallagher brought this action against defendants Eat to the Beat, Inc. and Global Infusion Group, Inc. alleging that they failed to provide her with sick leave and pay her overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and other District of Columbia laws.  Compl. [Dkt. # 1] ¶¶ 1–2.

Pending before the Court is defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defs.' Second Mot. to Dismiss [Dkt. # 11] ("Defs.' Mot.").  Defendants contend that plaintiff is not their employee, as that term is defined under FLSA, 29 U.S.C. § 203(e)(1), and thus the Court lacks jurisdiction over the complaint.  *Id.*  Plaintiff opposed the motion.  Pl.'s Opp. to Second Mot. to Dismiss [Dkt. # 13] ("Pl.'s Opp.").

The Court finds that it has subject-matter jurisdiction over the FLSA claim, and that plaintiff has sufficiently alleged in her complaint that she was defendants' employee.  Therefore, the Court will deny the motion to dismiss.

**BACKGROUND**

Defendants manage events all over the world, including at The Anthem, a music venue located in the waterfront area of Southwest Washington, D.C.  Am. Compl. ¶ 1.  Their "core business" is to provide catering and event planning services to various venues.  *Id.* ¶ 21.  Plaintiff alleges that she worked exclusively for defendants from October 10, 2017 to approximately June 6, 2019.  *Id.* ¶¶ 18, 27.  While she was there, she had two job titles:  "operations manager" and "assistant operations manager."  *Id.* ¶ 23.  Her duties were not structured around any one event or concert, *id.* ¶ 25, but they included:

    i.    reviewing, inspecting, and cleaning the kitchen and concessions stations in order to ensure sanitary standards;

    ii.    performing food preparation, such as chopping onions, defrosting hotdogs and sausages, baking pretzels, cookies, and brownies, heating sauces, creating cheese and meat platters;

    iii.    interviewing and hiring new employees on behalf of [d]efendants;

    iv.    training [d]efendants' employees;

    v.    setting up furniture, props, decorations, flowers, linens, and other accommodations for concerts, artist catering, concessions, "VIP Box Hospitality," and corporate events;

    vi.    maintaining a close and professional relationship with [d]efendants' business partner, The Anthem;

    vii.    producing a daily report on her work, attending weekly meetings for The Anthem's on-site management, and participating in weekly video conferences with the U.K. office;

    viii.    ordering supplies and materials to prepare for the concessions and catering business;

    ix.    authorizing and checking supplier invoices; and;

    x.    authorizing and checking staff hours for payroll.

Am. Compl. ¶ 26.

Plaintiff alleges that she worked with customers and clients that were recruited by defendants, and that she did not have the option to decline to work at any particular event.  Am. Compl. ¶ 28.  Furthermore, she alleges that defendants closely supervised her work, and provided her with a laptop, phone, office space, and per diem payment for travel.  *Id.* ¶¶ 30–35.

Plaintiff was paid a flat daily rate for either "event days," during which she would typically work between fifteen and sixteen hours, or "office days," which accounted for approximately 60 hours per week.  Am. Compl. ¶¶ 48, 49–50.  She was also paid tips and included in the tip pool for employees at The Anthem.  *Id.* ¶¶ 54–55.

Plaintiff was terminated in June of 2019, *see* Am. Compl. ¶¶ 18, 30, and on October 10, 2019, she filed the instant lawsuit.  Compl.  She amended her complaint on December 10, 2019, and it now contains four claims:  (1) failure to pay overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; (2) failure to pay overtime wages under the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*; (3) failure to pay wages under the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*; and (4) failure to provide sick leave under the District of Columbia Accrued Safe and Sick Leave Act ("ASSLA"), D.C. Code § 32-531.01 *et seq.*  Am. Compl. ¶¶ 75–101.

On December 12, 2019, defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1).  *See* Defs.' Mot.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216

F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

## I.    Subject-Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems

4

appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

## ANALYSIS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994).   The Court generally derives its subject matter jurisdiction from two federal laws, 28 U.S.C. §§ 1331 and 1332.  "Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States.   [She] invokes § 1332 jurisdiction when [s]he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000."  *Id.* (internal citations omitted).

Defendants argue that the Court lacks subject-matter jurisdiction over the lawsuit because the parties are not diverse, and because plaintiff has not raised a colorable federal claim.  Defs.' Mot. at 2, 4–5.  FLSA requires certain employers to pay their employees an overtime wage equal to 1.5 times their regular wage.  29 U.S.C. § 207(a)(1).  Defendant's contend that the statute does not a supply a basis for jurisdiction here because plaintiff is an independent contractor and not "an 'employee' within the meaning of the statute."  Defs.' Mot. at 1, 6–7.  Because, in defendant's view, FLSA has been improperly invoked, all of the other claims must be dismissed as well because the Court would lose the basis to exercise supplemental jurisdiction over the state law claims.  *Id.* at 7.  But this is an attack on the claim on its merits, and not a jurisdictional argument.

The D.C. Circuit has stated that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisidictional in character." *Fernandez v. Centerplate*, 441 F.3d 1006, 1009 (D.C. Cir. 2006), quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).  The Court went on to state that "[u]nless 'the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional,' such a limitation 'is an element of a plaintiff's claim for relief, not a jurisdictional issue.'"  *Id.*  In *Fernandez*, the district court dismissed a FLSA case for lack of subject-matter jurisdiction when defendant submitted an

6

undisputed declaration that the plaintiff had been paid overtime wages for the hours she worked in excess of 40 hours per week; the court found that plaintiff had therefore failed to establish federal question jurisdiction. *Id.* at 1008. The Court of Appeals reversed, holding that the merits of plaintiff's claim "turn[ed] on whether she was paid for hours worked in excess of forty per week, [but] nothing in the FLSA suggests that a failure to prove this particular element of her cause of action requires a dismissal for lack of jurisdiction." *Id.* at 1009. It found that resolution of the claim was more appropriate at summary judgment, rather than on a motion to dismiss. *Id.*

Similarly, in *Malloy v. Ass'n of State & Terr. Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50 (D.D.C. 2013), defendant moved to dismiss for lack of subject-matter jurisdiction, arguing that it was not the sort of commercial enterprise covered by FLSA. *Id.* at 53, citing 29 U.S.C. § 207(a)(1). The court refused to dismiss the case on that basis, holding that FLSA did not contain any language suggesting that enterprise coverage was jurisdictional. *Id.* Thus, the Court treated "enterprise coverage as a substantive ingredient of the plaintiff's claim rather than a jurisdictional prerequisite." *Id.* at 54.

Here too, nothing in FLSA indicates that Congress intended the "employee" status of a plaintiff to be a jurisdictional prerequisite, and at least one circuit has found the employment status of a party to be a nonjurisdictional fact. *See Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 975 (9th Cir. 2019) ("It is clear that the FLSA's employment status provision . . . should be construed as nonjurisdictional."). Courts in other districts have come to the same conclusion. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 601 (D. Md. 2014) ("Consequently, whether a defendant is an employer as defined by the FLSA is an element of the plaintiff's meritorious FLSA claim and does not implicate subject-matter jurisdiction."); *Luna-Reyes v. RFI Const., LLC*, 57 F.

Supp. 3d 495, 500–01 (M.D.N.C. 2014) citing *Fernandez*, 441 F.3d at 1009 (holding that whether a defendant is an employer as defined by the FLSA does not implicate subject-matter jurisdiction).

The Court finds these rulings to be persuasive, and it notes that courts in this district have found challenges to employee status under other federal employment statutes to be merits-related rather than jurisdictional.  *See Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 12–13 (D.D.C. 2009) (finding that definition of "eligible employee" under the Family Medical Leave Act was not a jurisdictional issue); *Harris v. Attorney Gen. of the United States*, 657 F. Supp. 2d 1, 7–8 (D.D.C. 2009) (holding that the Title VII "employee" requirement was nonjurisdictional).

Thus, whether plaintiff is an employee or not is not relevant to the Court's jurisdiction; rather, it is an element of her claim.  Therefore, the Court will not dismiss the complaint for lack of subject-matter jurisdiction.

In their reply, defendants proposed that the Court could simply treat their motion as a motion for summary judgment, and they argue that plaintiff has failed to prove that she is an employee and has failed to create a genuine dispute of fact on the issue.  Defs.' Reply in Supp. of Second Mot. to Dismiss [Dkt. # 14] at 4–5 ("Defs.' Reply").  But when converting a motion to dismiss to one for summary judgment, "district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions."  *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).  This ensures that "summary judgment treatment would be fair to both parties."  *Tele–Commc'ns of Key West, Inc. v. United State*s, 757 F.2d 1330, 1334 (D.C. Cir. 1985).  Converting a motion "is usually only appropriate where (1) the evidence submitted is sufficiently comprehensive to conclude that further discovery would be unnecessary; and (2) the non-moving party has not been unfairly disadvantaged by being unable to access the

sources of proof necessary to create a genuine issue of material fact." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 24 (D.D.C. 2013), citing Fed. R. Civ. P. 12(d).

Here, defendants first raised the possibility of converting the motion to dismiss to a motion for summary judgment in their reply, after plaintiff had already responded to the motion to dismiss for lack of jurisdiction. Indeed, she was never placed on notice that she had to address the merits at all – what defendants filed was a motion under Rule 12(b)(1), not 12(b)(6). Plaintiff has not yet had the opportunity to gather and present evidence in support of her case. And defendants simply point to a few documents in support of their belated request for summary judgment, and they do not constitute the "comprehensive" evidence that would obviate the need for additional discovery.[1] Whether plaintiff is an employee is a fact-intensive issue, and at this point, there is not enough evidence in the record to enable the Court to decide the question as a matter of law. Thus, the Court will not accept defendants' last-ditch invitation to convert the motion to dismiss to a motion for summary judgment.

While the proposed conversion would not be appropriate, there are instances in which defendants erroneously rely on Rule 12(b)(1) to dismiss the complaint, and the court has gone on to analyze the motion under Rule 12(b)(6), even if the defendant did not move to dismiss on that basis. *See, e.g.*, *Malloy*, 955 F. Supp. 2d at 54 (collecting cases). Thus, the Court will analyze

---

1       In support of their contention that plaintiff is not an employee, defendants submit a declaration from a Global Infusion Group employee describing plaintiff's role with the organization, *see* Declaration of Frances Butler [Dkt. # 6-1] ¶¶ 5–19, an email from plaintiff requesting a 1099 Tax Form, Ex. 2 to Defs.' Mot. [Dkt. # 11-2], and the letter extending the job offer to plaintiff which states that she is not eligible for overtime pay. Ex. 2 to First Mot. to Dismiss [Dkt. # 6-2]. In response, plaintiff submitted a declaration describing her position with facts that could support her status as an employee. *See generally* Declaration of Margaret Gallagher [Dkt. # 13-1]. This is important evidence that will weigh into the analysis, but one could hardly conclude at this time that there is no genuine issue of fact in dispute, and there are multiple factors to consider when determining whether a plaintiff qualifies as an employee under the FLSA. *See, e.g.*, *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10–11 (D.C. Cir. 2001).

defendants' motion under Rule 12(b)(6).  But, since it has already found that converting the motion to one for summary judgment would not be appropriate, it will not consider the exhibits attached to defendants' motion.  *Id.* (treating the 12(b)(1) motion as a 12(b)(6) motion but declining to convert it to a motion for summary judgment and therefore deciding not to consider the exhibits submitted by the parties).

Applying the *Iqbal* standard, and resolving all inferences in favor of the plaintiff at this time, the Court finds that plaintiff has adequately alleged that she was defendants' employee.

The Fair Labor Standards Act – rather unhelpfully – defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and it defines "employ" as "to suffer or permit to work."  *Id.* § 203(g).  Because the statutory definition is broad, the Supreme Court has directed courts to look to the "economic reality" rather than "technical concepts" to determine employment status under FLSA.  *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); Defs.' Mot. at 4–5.  The economic realities "test considers the extent to which typical employer prerogatives govern the relationship between the putative employer and employee."  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).

The D.C. Circuit has provided a set of factors to be considered in the analysis of the economic reality of the relationship:

> [W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, (4) maintained employment records . . . [as well as] [5] the degree of control exercised by the employer over the workers, [6] the workers' opportunity for profit or loss and their investment in the business, [7] the degree of skill and independent initiative required to perform the work, [8] the permanence or duration of the working relationship and [9] the extent to which the work is an integral part of the employer's business.

*Morrison*, 253 F.3d at 11, citing *Brock v. Superior Care Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988); *see also Henthorn*, 29 F.3d at 684.  The Court of Appeals explained that "[n]o one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence" in their inquiry.  *Morrison*, 253 F.3d at 11.

Plaintiff alleges in her complaint that defendants had the power at "all relevant times" to "hire and fire" her, Am. Compl. ¶ 67, to "control [her] work schedule," *id.* ¶ 68, to "supervise and control [her] work," *id*. ¶ 69, and "to set [her] rate and manner of pay." *Id.* ¶ 70.  She alleges that she would interview and hire new employees on behalf of defendants, and she was tasked with training the new employees.  *Id.* ¶ 26.  Part of her responsibilities also included "authorizing and checking staff hours for payroll."  *Id.*  In addition, she states that defendants provided her with work equipment, such as a laptop and a phone, *id.* ¶ 30; that she was given a per diem for work travel and defendants paid for her car repairs, *id.* ¶ 32; and that defendants closely supervised how plaintiff administered payroll policies, going as far as to instruct her what to say in emails to employees.  *Id.* ¶ 36.  Defendants also allegedly provided plaintiff with "detailed training and instructions on how to prepare food for concessions and catering services," *id.* ¶ 37, and detailed instructions on how to decorate for events at The Anthem.  *Id.* ¶ 38.  Defendants required plaintiff to obtain a "ServSafe Certificate" which is issued by the District of Columbia regarding the safety and quality of food service, and they paid for this certification.  *Id*. ¶ 39.  Finally, plaintiff alleges that she was paid a consistent daily rate, dictated by defendants, via direct deposit, and she was included in the employee tipping pool after events.  *Id.* ¶¶ 50, 54–55.

Under the "economic reality" factors set forth by the D.C. Circuit, and at this stage of the litigation, plaintiff has sufficiently alleged that she is an "employee" and is therefore protected by FLSA's provisions.  *See Morrison*, 253 F.3d at 11.  This ruling should not be interpreted as any

11

conclusion as to what the facts will ultimately show; the facts have yet to be adduced or submitted to the Court for its consideration. The Court will not dismiss the complaint under Rule 12(b)(6), and the matter may proceed to discovery, but whether the claims will survive summary judgment is as yet unknown.

### CONCLUSION

For the foregoing reasons, the Court will deny the defendants' motion to dismiss.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  August 4, 2020